Heady *v*. The Vevay, Mt. Sterling and Versailles Turnpike Co.

———————————

HEADY *v*. THE VEVAY, MT. STERLING AND VERSAILLES TURNPIKE CO.

TURNPIKE.—*Condemnation of Right of Way.*—*Notice to Justice of the Peace.*— The charter of a turnpike company, in providing the mode of assessing damages for the condemnation of the right of way, directed the giving of notice to a justice of the peace of the county, without prescribing the form or contents of such notice.

*Held*, that the fact that a written instrument filed before a justice by said company, in a proceeding to condemn the right of way over land, after giving notice to the justice, assumed the form of a complaint against the owner of the land, did not vitiate the notice or render it bad on demurrer.

Heady *v.* The Vevay, Mt. Sterling and Versailles Turnpike Co.

SAME.—*Construction of Branch Roads.*—Said charter authorized the construction of branch roads, but did not prescribe the mode of condemning land therefor and assessing the damages.

*Held,* that in the construction of branch roads the regulations prescribed in the charter for the construction of the main road were applicable.

SAME.—*Practice on Appeal.* — In such proceeding to condemn the right of way, the land-owner demurred to said notice, or complaint, before the justice, the justice sustained the demurrer, and the turnpike company appealed to the circuit court, the charter giving either party the right to such appeal without prescribing the mode of trial in the circuit court. The demurrer was refiled in the circuit court, and was overruled, and the land-owner thereupon moved to remand the cause to the justice of the peace for the assessment of damages in the mode provided by the charter.

*Held,* that there was no error in overruling this motion.

*Held,* also, that the cause stood for trial in the circuit court *de novo,* as other appeals from justices, and it having been tried, without objection, by a jury of twelve men, no objection could be made to the mode of trial.

NEW TRIAL.—*Motion.*—"That the court erred in admitting testimony offered by the plaintiff and objected to at the time by the defendant," is too indefinite a statement of a cause in a motion for a new trial.

EVIDENCE.—*Inspection of Premises by Jury.*—*Turnpike.* — The impressions made upon the minds of jurors by the examination of premises to which the jury has been sent for such examination do not constitute a part of the evidence in the cause; and, therefore, it was error to instruct the jury, on the trial of a proceeding to condemn the right of way for a turnpike company, that, in determining the damages, the information derived from the view had by the jury of the premises through which it was proposed to construct the road should be considered as a part of the evidence.

From the Switzerland Circuit Court.

*J. A. Works* and *J. D. Works,* for appellant.

*W. R. Johnston,* for appellee.

BUSKIRK, J. — This proceeding was instituted before a justice of the peace, to condemn the right of way over a portion of the appellant's land, to enable the company to construct a branch road. The turnpike company was incorporated by a special act of incorporation. See Local laws of 1850, page 470.

In the justice's court, the appellant demurred to the complaint, and the demurrer was sustained. The appellee appealed to the circuit court, where such demurrer was refiled and overruled. The appellant then moved the court

to remand the cause to the justice of the peace for the ascertainment of the damages occasioned by such condemnation, in the mode prescribed by the charter, but the motion was overruled.

The cause was tried by a jury and resulted in a finding for the appellant in the sum of one hundred and ninety-five dollars, and that appellee pay the costs. A motion for a new trial was made by the appellant, and overruled.

Proper exceptions were taken to all these rulings, and proper assignments of error are made.

The first question presented for decision is, whether the court below erred in overruling the demurrer to the complaint, which was as follows:

"State of Indiana, Switzerland County:

"Before James H. Patterson, justice of the peace of said county.

"The president and directors of the Vevay, Mt. Sterling and Versailles Turnpike Company, a corporation duly and legally organized and incorporated under, pursuant to, and by the laws of the State of Indiana, to wit, an act of the General Assembly of the State of Indiana, entitled 'an act to incorporate the Vevay, Mt. Sterling and Versailles Turnpike Road Company' (approved January 4th, 1850), give notice to James H. Patterson, justice of the peace, as aforesaid, and complain of Edward C. Heady, and say that the board of directors of said Vevay, Mt. Sterling and Versailles Turnpike Company, deeming it to be for the best interest of said company to make a branch of their said turnpike road, have located a branch of said road, fifty feet wide, over and upon a part of the following described tract or parcel of land, situated in Jefferson township, in said county, owned by the said Edward C. Heady, to wit: a part of the northeast and a part of the southeast quarters of section 11, town 2, range 3 west, bounded as follows: commencing at a stake on the west line of the first mentioned quarter section, from which a beech tree eighteen inches in diameter bears north thirty-one minutes, distant twenty-four links, thence

north twenty-five chains, thence east twenty-nine chains and seventy-five links, thence south twenty-four degrees east ten chains and seventy-five links, thence east seven chains and twenty-seven links, thence south fourteen chains and fifty links, thence west seven chains and seventy-three links, thence south fifteen and three-fourths minutes three chains and seventy links, thence south thirty-nine degrees east twenty-two chains and seven links, thence south twenty-five and one-half degrees east twelve chains, thence five and one-half degrees east three chains and twelve links, thence west two chains and thirty-seven links, thence south eight degrees west fourteen chains and eleven links, thence south eighty-eight and one-half degrees six chains and seventy-six links, thence south eighty-seven and one-half west seven chains and twenty-seven links, thence north forty-four and one-half degrees west ten chains, thence south seventy-four degrees west seventeen chains and fifty links, to the place of beginning, containing two hundred and six and three-hundredths of an acre, according to a survey of said lands, made March 12th, 1858, by Cornelius R. Harris, then county surveyor of Switzerland county, Indiana, except therefrom thirty-three hundredths of an acre sold and conveyed by William C. Kemp and wife to Samuel Protsman for the purpose of a road; that said branch of said turnpike is located so as to run through said above described tract of land of Edward C. Heady, as follows, to wit: commencing at a point on the line dividing the lands of said Edward C. Heady and Samuel Protsman, ten feet north forty-eight degrees west from a stake, being stake numbered twenty of the survey of said branch of said turnpike, thence north forty-eight degrees west seven hundred and ninety feet to a stake numbered twenty-eight of said survey, thence north thirty-five degrees west two hundred feet to a stake number thirty of said survey, thence north thirty west three hundred feet to a stake number thirty-three of said survey, thence north thirty-five degrees west three hundred feet to a stake number thirty-six of said survey, thence north forty-two degrees west one

hundred feet to a stake number thirty-seven of said survey, thence north sixty-five degrees west one hundred feet to a stake number thirty-eight of said survey, thence north eighty-three and one-half degrees west one hundred feet to a stake number thirty-nine of said survey, thence seventy-three degrees west one hundred feet to a stake number forty of said survey, thence north sixty-six degrees west two hundred feet to a stake number forty-two of said survey, thence north seventy-one degrees west one hundred feet to a stake number forty-three of said survey, thence north eighty-two degrees west twenty feet, to the line dividing the lands of said Edward C. Heady and George Tardy ; the whole length of that part of said branch of said road which runs over said lands of said Edward C. Heady being two thousand three hundred and ten feet. The whole of said branch of said road is in Switzerland county; and Edward C. Heady refuses to relinquish the part of said tract of land on and over which said part of said branch of said road is located, as aforesaid, for the use of said branch of said road, and refuses to relinquish the right of way for the same over said land, as the same has been located, as aforesaid; and that said Edward C. Heady claims damage from said company therefor; and that no satisfactory contract can be made with said Edward C. Heady by said company therefor. Wherefore said president and directors of said company demand that a summons be issued to said Edward C. Heady to appear before said justice of the peace on a day to be named in the summons, and within ten days from the filing of this notice, and if the parties cannot agree, then a jury of three disinterested men of the county be summoned to assess the damage, if any, sustained by said Edward C. Heady, by reason of the location and construction of said branch of said road over and upon said lands, as aforesaid."

It is contended by counsel for appellant that the above complaint was insufficient in form and substance. It is claimed that it should have been a notice and not a complaint. The manner of assessing damages for land that has

been condemned and appropriated is regulated by sections 20 and 21 of said charter, which are as follows:

"Sec. 20.    It shall be lawful for the corporation either before or after the location of any section of said road, to obtain from the person or persons through whose land said road may pass, a relinquishment of so much of said land as may be necessary for the construction of said road or location thereof, as also the stone, gravel, wood, timber, or other materials that may be obtained on said route, or near thereto, for the benefit of said corporation; and all such contracts, relinquishments, donations, gifts, grants, or bequests made and entered into in writing by any person or persons capable in law to contract, made in consideration of such location or otherwise, and for the benefit of such corporation, shall be binding and obligatory, and the corporation may have their action in law in any court of competent jurisdiction to compel the observance of the same.

"Sec. 21.    If any person or persons owning land over and upon which said road may be located shall refuse to relinquish the same for the use of said road, and claim damages from said company, and no satisfactory contract can be made with such owner by said company therefor, it shall be lawful for said company to give notice to some justice of the peace of the county in which said land is situated, and such justice shall thereupon summon the owner of said land, if a resident of the county, to appear before him on a day to be named therein and within ten days thereafter, and if the parties cannot then agree said justice shall issue a venire for summoning before him a jury of three disinterested men of the county, to be selected by said justice, and such jury, after having taken an oath or affirmation faithfully and impartially to assess the damages, if any, shall view the lands upon which said damages are claimed, and shall determine the same, duly considering the advantage and disadvantage of said road to said owner, and shall make report thereof to such justice, whereupon he shall enter judgment upon such report, from which judgment either party may

appeal to the circuit court, but no appeal taken shall stay the proceedings of the company in opening and constructing such road over and upon such lands."

Section 21 requires notice to be served upon a justice of the peace, but it does not prescribe the form of the notice or declare what it shall contain.    The instrument heretofore set out notifies the justice and at the same time complains of the owner of the land.    It is full and complete, and contains a recital of all the facts which could be useful to the parties. The fact that, after serving notice upon the justice, it assumes the form of a complaint against the appellant cannot vitiate it.    We think the court committed no error in overruling the demurrer to the complaint, so far as the form of it is concerned.    But it is contended that the proceedings had were not authorized by the charter.    The land of the appellant was condemned for the purpose of constructing a branch road, and, while the charter authorizes the construction of branch roads, it does not prescribe the mode in which land shall be condemned and the damages assessed.

Section 37 of said charter provides, that "said company may, whenever the board of directors shall deem it to be the interest of said company, make branches of said road in any direction through said county of Switzerland, and to such points in the county of Switzerland, as they may determine." It is argued by counsel for appellee that the power granted by the above quoted section to construct branch roads, by necessary implication, carries with it the same power which is given by the charter for the construction of the main road.    We think the branch roads are to be constructed under the rules and regulations prescribed for constructing the main road.

It is next claimed that the court erred in refusing to remand the cause to the justice of the peace.    We think there was no error in this.    The justice rendered final judgment in favor of appellant.

Section 21 gives to either party the right of appeal to the circuit court.    The appellee appealed.    The charter does

not prescribe how it should be tried in the circuit court. It stood for trial *de novo*, and was properly tried by a jury of twelve men. The act of May 12th, 1852, 1 G. & H. 474, provides that on appeal the case shall be tried by the viewers. *Beynon* v. *The Brandywine, etc., Co.*, 39 Ind. 129; *Hays* v. *Parrish*, at present term, *post*, p. 132. There is no such provision in the charter under examination. Hence, the case was triable as in case of other appeals from justices of the peace. Besides, there was no objection to the trial of the cause by a jury of twelve men, and this failure to object was a waiver of any objection to the mode of trial. See the case last cited and that of *Piper* v. *The Connersville, etc., Co.*, 12 Ind. 400.

It is also insisted that the court erred in overruling the motion for a new trial. It is claimed that the court erred in the admission of incompetent evidence. The first reason for the new trial is, that the court erred in admitting testimony offered by the plaintiff and objected to at the time by the defendant. This is too indefinite. It should have pointed out what evidence was improperly admitted. No question is presented.

The giving of the second instruction is complained of. The portion complained of is as follows:

"You must determine the question of damages from the evidence before you, giving the same and each part thereof the weight you think it entitled to, and no more; as a part of the evidence in the case, such information as you derived from the view you had of the premises through which the road is proposed, and of the line of the said proposed road."

We think the portion of the instruction above set out cannot be sustained. In *The Evansville, etc., R. R. Co.* v. *Cochran*, 10 Ind. 560, where a jury was sent to examine the premises, and the record contained nothing in relation to the impression produced upon the minds of the jury by the examination, it was held that the evidence was not all in the record, though the bill of exceptions stated that it contained all; in other words, it was held that the impression made

upon the minds of the jurors by such examination consti-
tuted a part of the evidence in the cause, and that is just
what the jury were told in the present case. The ruling in
the above case was followed in several subsequent cases.
But in *The Jeffersonville, etc., R. R. Co.* v. *Bowen,* 40 Ind.
545, the above case was overruled.

In the case last cited, a quotation was approvingly made
from the opinion in *Close* v. *Samm,* 27 Iowa, 503, where the
following language was used:

" It seems to us that it was to enable the jury, by the view
of the premises or place, to better understand and compre-
hend the testimony of the witnesses respecting the same,
and thereby the more intelligently to apply the testimony to
the issues on trial before them, and not to make them silent
witnesses in the case, burdened with testimony unknown to
both parties, and in respect to which no opportunity for
cross-examination or correction of error, if any, could be
afforded either party."

It results that the impression made upon the minds of the
jurors does not constitute a part of the evidence in the
cause and cannot be considered in rendering their verdict.
It is due the learned judge who presided in the court below
to state that the trial was had before the decision was ren-
dered in the above case in 40 Ind., overruling the opinion
reported in 10 Ind., *supra.*

For the error in giving the above instruction, the judg-
ment must be reversed.

The judgment is reversed, with costs, and the cause is
remanded for a new trial in accordance with this opinion.