### THE CITY OF TOPEKA v. PROCULE MARTINEAU.

1. STREET—*Lowering Grade—Diminished Value—Testimony.* In an action against a city to recover for the depreciation in the value of property by reason of lowering the grade of the street in front of such property, it is not error to permit a witness to testify that the property is worth a certain sum less, or one-third less, on account of the change of grade, where such witness has already testified what the value was before the grade was altered.

2. ———— *Element of Damage.* In such a case, the cost of lowering a building on the property to the newly-established grade, may be shown as an element of the damage suffered.

3. JURY, *Viewing Premises—Instruction, Not Error.* On the trial, evidence was offered in court to show the depreciation in value of the property, and by consent of both parties the jury were sent by the court to view the premises, after which, in charging the jury, the following instruction was given: "The court has sent you, under charge of a bailiff, to examine the premises in question. You may, in considering your verdict, take into consideration the result of your observation in connection with the evidence produced before you." *Held*, That the giving of the instruction was not error.

*Error from Shawnee District Court.*

THE opinion states the case.    Judgment for plaintiff *Martineau* against *The City* for $800, at the September term, 1886. The defendant brings the case here.

*W. A. S. Bird*, city attorney, for plaintiff in error; *G. B. Andrews*, of counsel.

*Waters, Chase & Tillotson*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an appeal by Procule Martineau from an award of damages for injuring his property in the city of Topeka by lowering the established street grade in front of the same.    The trial resulted in a verdict and judgment against the city for $800, and it brings the case here, complaining of rulings on the admission of evidence and in charging the jury.    It is claimed that witnesses were permitted to give an estimate of the damage suffered, and to do that which the jury alone can do; but the record does not sustain the claim.    One witness who was competent to testify had given the value of the property before the change of grade at $10,000, and was allowed to state that it was $2,000 less after the grade was lowered.    Another witness who had given the value immediately before the change stated that it was worth one-third less after the change had been made.    No prejudice could result from this testimony.    It is conceded that the correct method of proving the damages is to show by the opinions of competent witnesses the value of the property before the injury and afterward, and the difference would be the amount of damages which should be awarded.    There is but little practical difference between this plan and the one adopted —

1. Street—lowering grade—diminished value—testimony.
no difference between $8,000 and an amount $2,000 less than $10,000.    Having given the value before the change, it is not error for the witness to testify that the property was worth a certain sum less than that value or a fraction of such value.    Nor is there any force

in the objection that the court permitted evidence to go to the
jury of the cost of lowering the building to the established
grade.    It may be conceded that it is not the
proper measure of damages in the action, but this
cost is an element which the jury may properly consider to
ascertain the damage or difference in the value of the property
before and after the injury.

2. Element of
damage.

The last objection is, that after the court had permitted the
jury to view the premises it gave this instruction:

"The court has sent you under charge of a bailiff to examine
the premises in question.   You may, in considering your ver-
dict, take into consideration the result of your observation in
connection with the evidence produced before you."

It is assumed that the instruction given warrants the jurors
in basing their verdict on the knowledge gained at the view,
in disregard of the testimony given in court, if they so desire.
This assumption is unwarranted by the language employed.
The court does not even say that the information so acquired
is evidence, much less that the verdict may rest alone on such
knowledge.   It advises them to use the result of their obser-
vation *in connection with the evidence*.   In a prior instruction
the jury were told that their verdict should be founded on the
evidence and on the law, which, taken in connection with the
instruction objected to, was no more than to say that in arriv-
ing at a verdict they were to judge the evidence in the light
and with the aid of what they saw at the view.   We think
the instruction was not erroneous.   In reaching
the conclusion it is not necessary that we should
indorse the theory adopted by some of the courts,
that the jury are not bound by the testimony of the witnesses,
but may rest their verdict solely on what is learned at the
view. (*Remy v. Municipality*, 12 La. Ann. 500; *Toledo &c.
Rld. Co. v. Dunlap*, 47 Mich. 456; *Chamberlin v. Brown*, 2
Dougl. 120.)   Neither are we disposed to go to the extreme
length contended for in this case, and which finds support in
some of the decided cases, that it is error to instruct the jury
to take into consideration in any degree the knowledge ac-
quired at the view, as it is not evidence at all upon which a

3. Jury, viewing
premises—in-
struction, not
error.

verdict is to be founded. (*Close v. Samm*, 27 Iowa, 503; *Wright v. Carpenter*, 49 Cal. 607; *Heady v. Turnpike Co.*, 52 Ind. 117.) The jurors are the judges of the facts, and to enable them to correctly determine the facts the legislature has provided that in certain cases they shall be conducted in a body and be shown by some one appointed for that purpose the property which is the subject of litigation, or the place in which any material fact occurred. (Civil Code, § 277.)   The evident theory and intention of the legislature were that cases would arise in which it would be necessary and proper that the evidence offered in court should be supplemented by the knowledge gained by the jury from a view.   It would be impracticable and foolish to require a court, after having sent a jury to view the property or place, to direct them not to consider what they had there observed and what was obvious to all who might look.   In considering this question the supreme court of Wisconsin said:

"We understand that the object of a view is to acquaint the jury with the physical situation, condition, and surroundings of the thing viewed.   What they see they know absolutely.   If a witness testify to anything which they know by the evidence of their senses on the view is false, they are not bound to believe, indeed cannot believe the witness, and they may disregard his testimony, although no other witness has testified on the stand to the fact as the jury knew it to be. For example, if a witness testify that a certain farm is hilly and rugged, when the view has disclosed to the jury and to every juror alike that it is level and smooth, or if a witness testify that a given building was burned before the view, and the view discloses that it had not been burned, no contrary testimony of witnesses on the stand is required to authorize the jury to find the fact as it is, in disregard of testimony given in court." (*Washburn v. Milwaukee &c. Rld. Co.*, 59 Wis. 364, 368.)

In the excellent work of Judge Thompson on the subject of Trials, he thoroughly examines this question and the decisions relating to the same, and reaches the conclusion that the information obtained at the view is evidence to be considered in connection with that offered in court:

"But the evidence which the jurors may acquire from mak-

ing the view is not to be elevated to the character of exclusive or predominating evidence. They are not to disregard other evidence in regard to the character and value of the property; and an instruction which conveys to them the impression that they may do so, is erroneous." (Thompson on Trials, § 895.)

To meet the objection that the knowledge acquired in making the view cannot be incorporated in a bill of exceptions so as to be conveyed to the minds of the appellate judges, it is held to be necessary that the verdict should be supported by other evidence, and unless it is supported by substantial testimony given by sworn witnesses, the reviewing court should set aside the verdict. This theory is more reasonable than the one that what jurors see and know while making the view is to be shut out of their minds as evidence, and is not without support. (Thompson on Trials, §§ 893, *et seq.*; *Neilson v. Rld. Co.*, 58 Wis. 517; *Washburn v. Rld. Co.*, 59 id. 364; *Parks v. City of Boston*, 15 Pick. 209; *Rld. Co. v. Dunlap*, 47 Mich. 456. See also *K. C. & S. W. Rld. Co. v. Baird*, 41 Kas. 69; same case, 21 Pac. Rep. 227.) The instruction given in the present case, however, is not objectionable under either theory. The other evidence given by the witnesses in court amply sustains the verdict, and it is manifest that the court did not intend to charge that the jury might ignore such evidence; nor does the language employed by the court go beyond the theory first mentioned, that the view which the jury make is only to enable them to understand and apply the evidence which they have heard.

We find no error in the record, and therefore the judgment will be affirmed.

All the Justices concurring.