No. 44,976

Kansas State Highway Commission, *Appellant,* v. Roland R. Roepke and Freda M. Thierstein Roepke, et al., *Appellees.*

(438 P. 2d 122)

Opinion filed March 9, 1968.

*John H. Morse,* of Topeka, Assistant Attorney General and Chief Attorney, argued the cause, and *Warren W. Wagoner,* Assistant Attorney, of Topeka, and *Kenneth V. Moses,* of Marysville, were with him on the brief for the appellant.

*Rowland Edwards,* of Waterville, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Price, C. J.: This appeal arises out of a condemnation proceeding.

Following a trial the court sustained the landowners' motion for a new trial on the ground the verdict was contrary to the evidence.

A second trial was had in which the jury returned a verdict in excess of that returned in the first trial. This verdict was approved and judgment was entered thereon.

The state highway commission then filed an appeal from the earlier order granting a new trial.

The question involved is whether the verdict in the first trial was contrary to the evidence.

For convenience—the state highway commission will be referred to as plaintiff and the landowners as defendants.

The background of the matter giving rise to this appeal is not in dispute.

In connection with a highway improvement project plaintiff condemned land owned by defendants. They appealed from the award of the appraisers. The case was tried before a jury on April 15, 1966. As often happens in cases of this nature, there was considerable variance in the evidence as to the value of defendants' property—both before and after the taking. In order to assist the jury in arriving at a verdict a summary of the "before and after" values testified to was prepared and submitted to the jury along with three special questions, with the consent of all parties. This "chart" and special questions—including the answers—were as follow:

### "VALUATION SUMMATION CHART BY WITNESSES

| | (1) Valuation of entire property or interest immediately before the taking | (2) Valuation of that portion of the tract or interest remaining immediately after the taking | (3) Difference equals total Compensation Due (1)—(2) equals (3) |
|---|---|---|---|
| Roland Roepke | $40,000.00 | $ | $ |
| Don Roche | 36,000.00 | 26,000.00 | 10,000.00 |
| Jesse Yantiss | 36,000.00 | 25,500.00 | 10,500.00 |
| Richard Heeney | 36,800.00 | 31,400.00 | 5,400.00 |
| Orval Lohse | 29,500.00 | 24,525.00 | 4,975.00 |
| Floyd Stryker | 32,000.00 | 26,400.00 | 5,600.00 |

### SPECIAL QUESTIONS

1. What was the market value of the entire property and interest immediately before the taking?

ANSWER: $32,000.

2. What was the market value of the remaining property and interest immediately after the taking?

ANSWER: $27,330.

3. What is the difference between the two amounts, by subtracting the second from the first, $4,670, which difference will be the amount of your award?

It will be seen that the jury's "mathematics" came out correct—that is—$32,000 less $27,330 equals $4,670.

Defendants filed a motion for a new trial on two grounds—(1) that the verdict was contrary to the evidence, and (2) that the court erred in denying the motion to strike the testimony of Richard Heeney, a witness for plaintiff.

On may 6, 1966, the court set aside the verdict and sustained defendants' motion for a new trial.

On September 21, 1966, just before the start of the second trial, plaintiff orally moved the court to rescind and set aside its order of May 6, 1966, granting a new trial. This motion was overruled—and the parties proceeded to trial.

We are told that the second trial was, for all practical purposes, a "rerun" of the first trial. Be that as it may—this time the jury found the "before and after" values to be $36,000 and $28,000—and returned a verdict for the difference—$8,000.

Plaintiff filed a motion to set aside this verdict and to rescind and vacate the order of May 6, 1966, granting a new trial to defendants, and to enter judgment on the verdict in the first trial.

On October 18, 1966, this motion was denied. The verdict in the second trial was approved and judgment on it was entered accordingly.

On December 5 and 16, 1966 (see K. S. A. 60-2103) plaintiff appealed from all of the foregoing adverse orders and urges the end result be that this court direct that judgment be entered on the verdict in the first trial.

In passing—it should be stated that no contention as to procedure is made in this case. Defendants concede that under K. S. A. 60-2102 (a) the order of May 6, 1966, granting a new trial was not a final decision in the action and therefore not appealable until after the second trial, and that if it should be determined that the order granting a new trial was erroneous this court may order the verdict in the first trial to be reinstated (*Oertel v. Phillips*, 197 Kan. 113, 115, 116, 415 P. 2d 223, and *Landscape Development Co. v. Kansas City P. & L. Co.*, 197 Kan. 126, 127, 415 P. 2d 398.).

In sustaining defendants' motion for a new trial and in denying plaintiff's subsequent motions—the trial court commented at length. Although some "concern" was expressed about the alleged confusion on the part of the witness Heeney, the court stated that it was for

the jury to determine whether he had "rehabilitated" himself and to weigh his testimony, and it is clear the fact the testimony of this witness was not stricken was no part of the basis of the order granting a new trial.

It likewise is clear the new trial was granted because the trial court was of the opinion the verdict was contrary to the evidence. It compared the verdict with other condemnation verdicts returned by the same panel of jurors, and stated that—

"This is the only case in which the jury returned a verdict which placed the difference between the before and after values at some $305.00 below the lowest figure testified to by a witness for the state highway commission."

By the above statement it is clear the court meant that the verdict was lower than the *difference* in value testified to by any *one* witness—such witness being Orval Lohse—who placed it at $4,975. (In passing, it is noted that both the "before" and "after" values of the witness Lohse were lower than the figures of the other witnesses.) This theory was repeated by the trial court throughout its comments—

"Now, to me the most important question here is the matter raised by the landowner in the first paragraph of his motion. And that is, that the verdict was contrary to the evidence and in elucidating on that and explaining that the amount of the verdict was not within the range of the evidence, it was a lesser amount than any witness placed on the difference."

. . . . . . . . . . . . .

"The figure brought in by the jury in this case was not within the range of any of the testimony."

. . . . . . . . . . . . .

"And there just isn't any combination that I can figure out in studying these figures, that the jury used in which they could arrive at this verdict of $4,670.00."

. . . . . . . . . . . . .

"If this original verdict had been within the range of the evidence, I feel most likely that the court would have made a different ruling."

Some mention also was made of the fact the jury viewed the premises. The provision of K. S. A. 60-248 (*b*), however, to the effect a view by the jury shall not be considered by the court in determining any question of the sufficiency or insufficiency of evidence admitted in an action—appears not to have formed any of the basis for the granting of the new trial.

K. S. A. 26-513 (*c*), being a part of the General Condemnation Law, effective January 1, 1964, reads—

*"Partial taking.* If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

The jury was so instructed, and was properly instructed on all matters—including the view of the premises, as to which the jury was told—

"You have viewed the premises. You may consider what you have seen along with the other evidence in the case in arriving at the amount of the compensation to be awarded to the property owners."

We do not understand the law to be that in a case of this kind a verdict may not be lower than the *difference* testified to by any *one* witness. Just as here, there usually is considerable variance in the testimony as to "before and after" value. A jury is entitled to consider all of the evidence—not just that of one witness. Here the evidence of the "before" value ranged from $29,500 to $40,000. The jury found it to be $32,000. The evidence of the "after" value ranged from $24,525 to $31,400. The jury found it to be $27,330. Both figures found by the jury were *within* the evidence—and the verdict represented the difference. We realize it could be argued that theoretically, the jury, under the evidence, could have found the "after" value to be higher than the "before" value—see amounts testified to by witnesses Lohse and Heeney—and yet the verdict would have been 'within the range" of the evidence. Courts are not so impotent, however, as to be unable to right such a situation should it arise.

In conclusion—the order of May 6, 1966, granting a new trial on the ground the verdict was contrary to the evidence is reversed with directions to reinstate the verdict in the first trial and to enter judgment thereon.

SCHROEDER, J., dissenting: On the first trial in this condemnation action the jury awarded the landowners less money for the property taken than any single expert witness who testified in the case would have given the landowners. In my opinion such verdict is not within the range of the evidence.

The fallacy of the general rule announced in the court's opinion is best illustrated by the fact that the jury, upon the only evidence presented in the record for our consideration, could return a verdict of $15,475 ($40,000 minus $24,525) for the landowners, or a

deficit in the sum of $1,900 ($29,500 minus $31,400) to be payable by the landowners to the condemning authority, and still be *within the range of the evidence.* (Kansas law, however, does not permit consideration of benefits conferred upon a landowner by a condemnation of part of his land.) Now, can it be successfully argued the taking of a permanent easement on 2.65 acres, plus a temporary construction easement on 7.16 acres, and damages to the remainder of the tract can vary as much as $17,375, and be within the range of the evidence in this case? I think not.

It is important to bear in mind the general rule here announced by the court cuts both ways. Usually the landowners' witnesses are high in appraising the value of a tract of land, and the condemning authority's witnesses appraise the property low. Where only a portion of a tract of land is taken, the highest value of any of the landowners' witnesses as to the value of the property before the taking, and the lowest value of any of the condemning authority's witnesses after the taking, will permit a jury to return a verdict within the range of the evidence which is unduly excessive. Under the court's decision counsel for the landowners will so argue the matter to the jury. Simply to say that "Courts are not so impotent, however, as to be unable to right such a situation should it arise" is to recognize the fallacy of the rule upon its pronouncement, and invite appellate litigation. The rule announced fails to take into consideration the practical aspects of appraisals made for condemnation purposes.

The provisions of K. S. A. 26-513 (c) quoted in the court's opinion, which is part of the general condemnation law, does not require the adoption of the rule stated in the majority opinion. A common sense application of the statute should require that the verdict be within the range of the testimony given by the witnesses. This would require taking into consideration not only the "before" and "after" value, but the difference in value stated by the witnesses. In other words, in my opinion, a verdict to be within the range of the testimony given by the witnesses in the first trial herein would have to be somewhere between $4,975 and $10,500, and a verdict either over or under this spread in damages would not be within the range of the evidence in this case.

A rule frequently stated and applied is that a verdict for actual damages ordinarily will not be disturbed merely because the court

cannot definitely ascertain the precise method by which the jury arrived at the exact amount of its verdict, when such amount is reasonably within the range of the evidence. (*Will v. Hughes,* 172 Kan. 45, 238 P. 2d 478.) This rule is not violated by the foregoing construction of 26-513 (*c*), *supra.*

The rule stated in *Urban Renewal Agency v. Tate,* 196 Kan. 654, 414 P. 2d 28, gives the appellant herein little comfort. There the entire tract was taken by the Urban Renewal Agency of the City of Wichita, and the only dollar value testimony in the case for the jury to consider was that of the landowner who placed the market value of the property somewhere between $8,000 and $9,000. The landowner had given considerable testimony, which was stated in the opinion, disclosing the manner in which she arrived at such value. The trial court instructed the jury to return a verdict placing the market value of the landowner's property at a figure or not less than $8,000 and not more than $9,000. On appeal it was held the trial court erred in so directing the jury because it was entitled to consider all of the evidence given by the landowner in arriving at its value.

In the instant case the only evidence indicated in the record which the jury had before it for consideration was the expert testimony of six witnesses, disclosed in the record on appeal by the "Valuation Summation Chart by Witnesses" set forth in the majority opinion.

One other point deserves mention. From the instructions we learn that the jury viewed the premises. The court in its opinion says the jury *was properly instructed on this matter,* setting forth the instruction given (identical with PIK 11.15, "View of Premises"). Apparently this instruction was taken from the case of *Taylor v. State Highway Commission,* 182 Kan. 397, 401, 320 P. 2d 832 (1958), where the rule is summarized in Syllabus ¶ 4 of the opinion.

The foregoing instruction is inconsistent with the instruction set forth in PIK 1.40, "Visiting Scene or Area," where the jury, among other things, is instructed that "What you (see) (have seen) at the scene you may take into consideration in arriving at your verdict in so far as what you (see) (have seen) is supported by evidence coming to you in the courtroom."

It is unnecessary to dwell on the foregoing inconsistency at length because the matter is now controlled by K. S. A. 60-248 (*b*), *which became effective January 1, 1964.* It provides:

"(*b*) *View of property or place.* Whenever in the opinion of the court it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body under the charge of an officer to the place, which shall be shown to them by some person or persons appointed by the court for that purpose. While the jury are thus absent no person other than the person so appointed shall speak to them on any subject connected with the trial. *A view permitted hereunder shall not be considered by the court in determining any question of the sufficiency or insufficiency of evidence admitted in an action.*" (Emphasis added.)

Under K. S. A. 26-508 (effective January 1, 1964) an appeal taken from an award in a condemnation action "shall be docketed as a civil action [in the district court] and tried as any other civil action." By reason thereof 60-248 (*b*), *supra,* applies to the trial of a condemnation action.

Section (*b*) of 60-248 above is identical with G. S. 1949, 60-2910 with one exception. The last sentence in 60-248 (*b*), above emphasized, has been added in the new code of civil procedure. This last sentence codifies the Kansas law on a question which is rather controversial in the various jurisdictions of the United States.

The controversial question is whether the matters perceived by the jury in making the view should be considered as evidence. If so, the jury might disregard the evidence produced at the trial in the courtroom and base the verdict or the finding of fact on the view alone. Prior Kansas decisions have taken the position that the view is evidence, but only in the sense that it aids the jury in understanding the evidence which has been produced in the courtroom. It is only the testimony or evidence presented in the courtroom which will support the jury's verdict. (See, Gard, Kansas Code of Civil Procedure Annotated, § 60-248 [*b*], p. 225.)

The prior Kansas law, now codified in the last sentence of 60-248 (*b*), *supra,* was best discussed in *City of Topeka v. Martineau,* 42 Kan. 387, 22 Pac. 419, as follows:

"It is assumed that the instruction given warrants the jurors in basing their verdict on the knowledge gained at the view, in disregard of the testimony given in court, if they so desire. This assumption is unwarranted by the language employed. The court does not even say that the information so acquired is evidence, much less that the verdict may rest alone on such knowledge. It advises them to use the result of their observation *in connection with the evidence.* In a prior instruction the jury were told that their verdict should be founded on the evidence and on the law, which, taken in connection with the instruction objected to, was no more than to say that in arriving at a

verdict they were to judge the evidence in the light and with the aid of what they saw at the view. We think the instruction was not erroneous. In reaching the conclusion it is not necessary that we should indorse the theory adopted by some of the courts, that the jury are not bound by the testimony of the witnesses, but may rest their verdict solely on what is learned at the view. (*Remy v. Municipality,* 12 La. Ann. 500; *Toledo &c. Rld. Co. v. Dunlap,* 47 Mich. 456; *Chamberlin v. Brown,* 2 Dougl. 120.) Neither are we disposed to go to the extreme length contended for in this case, and which finds support in some of the decided cases, that it is error to instruct the jury to take into consideration in any degree the knowledge acquired at the view, as it is not evidence at all upon which a verdict is to be founded. (*Close v. Samm,* 27 Iowa, 503; *Wright v. Carpenter,* 49 Cal. 607; *Heady v. Turnpike Co.,* 52 Ind. 117.) The jurors are the judges of the facts, and to enable them to correctly determine the facts the legislature has provided that in certain cases they shall be conducted in a body and be shown by some one appointed for that purpose the property which is the subject of litigation, or the place in which any material fact occurred. (Civil Code, § 277.) The evident theory and intention of the legislature were that cases would arise in which it would be necessary and proper that the evidence offered in court should be supplemented by the knowledge gained by the jury from a view. It would be impracticable and foolish to require a court, after having sent a jury to view the propery or place, to direct them not to consider what they had there observed and what was obvious to all who might look. . . ." (pp. 389, 390.)

In *Headington v. Central Building Co.,* 141 Kan. 338, 341, 41 P. 2d 1040, it was said: "This court has taken a middle ground," and that information gained in the view was explanatory of the evidence, not evidence proper.

The effect of the rule, as above codified, is to put the trial and the appellate courts in the position of testing the sufficiency of the evidence to support a verdict or finding by the court, if the case is tried without a jury, upon a consideration of the evidence in the record, independently of the view itself. (See, Gard, Kansas Code of Civil Procedure Annotated, § 60-248 [b], p. 225.)

It is apparent from the foregoing discussion that the instruction given by the trial court to the jury in the first trial of this action on the 15th day of April, 1966, was clearly erroneous, and may have been responsible for misleading the jury.

It is respectfully submitted the order of the trial court granting the appellees' motion for a new trial, and its judgment approving the verdict in the second trial should be affirmed.